**HAAK MOTORS, LLC**
A Maryland Limited Liability Company
6407 Church Hill Road
Chestertown MD 21620

and

**SEAHAWK, LLC**
A Maryland Limited Liability Company
2600 Merrymans Mill Lane
Phoenix, MD 21131

and

**LLOYD HAAK**, an individual
2600 Merrymans Mill Lane
Phoenix, MD 21131

          Plaintiffs

v.

**ROBERT L. ARANGIO, SR., Esq.,** an individual

SERVE:    Robert L. Arangio, Sr., Esq.
          c/o Forceno & Arangio
          111 S. Independence Mall East
          Philadelphia, PA 19106

and

**ROBERT L. ARANGIO, JR.,** an individual

SERVE:    Robert L. Arangio, Jr.
          c/o Forceno & Arangio
          111 S. Independence Mall East
          Philadelphia, PA 19106

and

IN THE

CIRCUIT COURT FOR

QUEEN ANNE'S COUNTY,

MARYLAND

CASE NO.: *17-C-09-014206*

JURY TRIAL REQUESTED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ARANGIO & GEORGE, LLP                     *
A Pennsylvania Limited Liability Partnership
                                          *
SERVE:      Robert L. Arangio, Sr., Esq.  *
            c/o Forceno & Arangio
            111 S. Independence Mall East *
            Philadelphia, PA  19106       *

                  Defendants              *

 *     *     *    ·*     *     *     *     *     *     *     *     *     *     *

### *FIRST AMENDED* COMPLAINT

Haak Motors, LLC ("Haak Motors"), Seahawk, LLC ("Seahawk"), and Lloyd Haak
("Haak"), Plaintiffs, by and through their undersigned counsel and Coon & Cole, LLC, sue
Robert L. Arangio, Sr., Esq. ("Arangio Sr."), Robert L. Arangio, Jr. ("Arangio Jr."), and Arangio
& George, LLP ("Arangio & George"), Defendants, and state as follows:

### *SCOPE OF AMENDMENT*

*This __First Amended Complaint__ restates and amends Plaintiff's original __Complaint__ and*
*hereby incorporates by reference each and every Exhibit annexed to the original __Complaint__ as*
*though the same were attached hereto and fully set forth in their entireties herein.*

### THE PARTIES

1.      Plaintiff Haak Motors is a Maryland limited liability company with its principal
place of business in Chestertown, Queen Anne's County, Maryland.

2.      Plaintiff Seahawk is a Maryland limited liability company with its principal place
of business in Phoenix, Baltimore County, Maryland.

3.      Plaintiff Haak is an individual and a resident of Phoenix, Baltimore County,
Maryland.  Plaintiff Haak is also the managing member and principal owner of Plaintiffs Haak
Motors and Seahawk.

4.      Plaintiff Haak, by and through Plaintiffs Haak Motors and Seahawk, was engaged
in the business of maintaining and operating an automobile dealership d/b/a Lloyd Haak Chrysler
Jeep Dodge ("Haak CJD") beginning prior to April, 2008 and ending on or about July 24, 2008.
Haak CJD sold and serviced new and used vehicles principally, although not exclusively, of
Chrysler manufacture, including those brands and/or makes commonly known as "Chrysler,"
"Jeep," and/or "Dodge."  Haak CJD transacted business at its dealership location (the

"Dealership Property"), which real property is situated at 6407 Church Hill Road, Chestertown, Queen Anne's County, Maryland 21620.

5.   Plaintiff Seahawk held title to the Dealership Property, and leased the Dealership Property to Plaintiff Haak Motors so that Plaintiff Haak Motors could operate and maintain its business, Haak CJD, thereon.  A copy of a Deed evidencing title to the Dealership Property in favor of Plaintiff Seahawk is attached hereto, labeled <u>Exhibit A</u>, and is incorporated by reference herein.

6.   On information and belief, Plaintiffs allege that Defendant Arangio Sr. is a resident of Philadelphia, Pennsylvania.  Defendant Arangio Sr. is an attorney currently practicing law with the law firm of Forceno & Arangio, 111 S. Independence Mall East, Philadelphia, PA 19106.  However, at all time periods relevant to the instant Complaint, Defendant Arangio Sr. was an attorney practicing law with Defendant law firm Arangio & George.

7.   Upon information and belief, Plaintiffs allege that Defendant Arangio Jr. is a resident of Philadelphia, Pennsylvania, and that Defendant Arangio Jr. is not a duly licensed attorney admitted to practice law in Pennsylvania or Maryland.

8.   At all times relevant herein, Defendant Arangio Jr. was an agent and/or employee of Defendants Arangio Sr. and Arangio & George acting within the scope of his agency and/or employment, and Defendants Arangio Sr. and Arangio & George are liable for his actions as his employer.

9.   Defendant Arangio & George was a Pennsylvania limited liability general partnership engaged in the business of the practice of law.  Defendant Arangio & George's principal place of business was 2000 Market Street, Suite 1440, Philadelphia, Pennsylvania 19103.  Upon information and belief, Plaintiffs allege that in the interim between when the events recounted in this Complaint transpired and the filing of this Complaint, Defendant Arangio Sr., the principal and general partner of Defendant Arangio & George, dissolved Arangio & George and formed the law firm of Forceno & Arangio.

10.   Defendants Arangio Sr. and Arangio & George are an attorney and a law firm, respectively, who hold themselves out to the public as specialists in handling transactions involving the sale of automobile dealerships.

## FACTS COMMON TO ALL COUNTS

11.    Prior to 2008, Plaintiff Haak Motors entered into a Franchise Agreement with Chrysler Motors, LLC ("Chrysler Motors"), wherein Chrysler Motors granted Haak Motors the right to own and operate an automobile dealership dealing in vehicles manufactured by Chrysler Motors, including those makes commonly known as "Chrysler," "Jeep," and/or "Dodge."

12.    On or about April, 2008, Plaintiff Haak received oral and/or written communications from William Ackridge III, a/k/a William Ackridge, by and on behalf of himself and/or two limited liability companies he controlled, namely Ackridge Automotive Group, LLC and William Ackridge, LLC (collectively, "Ackridge"), wherein Ackridge expressed interest regarding a possible sale of the Haak CJD automobile dealership business from Plaintiffs to Ackridge (the "Dealership Sale").

13.    After Plaintiff Haak was initially contacted by Ackridge regarding the Dealership Sale, Plaintiffs engaged Defendants Arangio Sr. and Arangio & George to provide them with legal services in conjunction with the Dealership Sale. A copy of the parties' Fee Arrangement is attached hereto, labeled <u>Exhibit B</u>, and is incorporated by reference herein.

14.    The Dealership Sale was intended to be a bifurcated transaction.

15.    The first part of the Dealership Sale occurred on or about June 7, 2008, when Plaintiff Haak Motors entered into an Asset Purchase Agreement and an Interim Management Agreement with Ackridge. Copies of the Asset Purchase Agreement and the Interim Management Agreement are attached hereto, labeled <u>Exhibit C</u> and <u>Exhibit D</u>, respectively, and are incorporated by reference herein. From on or about June 1, 2008, until on or about July 24, 2008, Ackridge was to and did function as interim managers of Haak CJD until such time as the Dealership Sale had been completed.

16.    The second part of the Dealership Sale transaction included two components. First, on or about July 24, 2008, Ackridge and Plaintiffs executed numerous instruments that purported to consummate the Dealership Sale. These instruments included a Bill of Sale and an Assumption of Liabilities Agreement, copies of which are attached hereto, labeled <u>Exhibit E</u> and <u>Exhibit F</u>, respectively, and are incorporated by reference herein. Second, at the same time as the aforementioned documents were executed, Ackridge and Plaintiffs also executed several other instruments, including a Real Estate Agreement of Sale that purported to consummate the sale of the Dealership Property from Plaintiff Seahawk to Ackridge. A copy of the Real Estate

Agreement of Sale is attached hereto as <u>Exhibit G</u> and is incorporated by reference as though fully set forth in its entirety herein.

17.    Defendants Arangio Sr. and Arangio & George were responsible for the drafting of, among other instruments: the Asset Purchase Agreement; the Real Estate Agreement of Sale; the Interim Management Agreement; the Bill of Sale; and the Assumption of Liabilities Agreement.  See Exs. C – G.

18.    In conjunction with the Dealership Sale, Ackridge was responsible for the wiring of certain monies constituting the purchase price of the assets and real property comprising Haak CJD via three (3) separate wire transactions (the "Wires"), a sum totaling approximately $4,031,665.84 (the "Purchase Price").

19.    The Wires consisted of three separate proposed wire transactions: (1) a wire payable to Wilmington Trust FSB ("Wilmington Trust") in the amount of $1,295,840.02, representing a payoff to Haak CJD's "floorplan financing" financier from Chrysler Financial, LLC (the "Wilmington Wire"); (2) a wire from PNC Bank payable to Sovereign Bank in the amount of $1,994,849.67, representing a payoff to the financier of the real property upon which Haak CJD was situated (the "Seahawk Wire"); and (3) a wire from PNC Bank payable to The Peoples Bank in the amount of $739,976.15, representing a payment to Plaintiff Haak Motors' bank for the balance of the value of all of Haak CJD's other assets (the "Haak Motors Wire").

20.    Defendants Arangio Sr. and Arangio & George never confirmed the receipt of the monies represented by the Wires with Plaintiffs' bank(s).

21.    Plaintiffs and/or their bank(s) never received the funds represented by the Seahawk Wire or the Haak Motors Wire (the "Missing Wires").  At Ackridge's behest, the Missing Wires were either cancelled or were purely fictitious and fraudulent misrepresentations from their inception.  The result of the failure of the Missing Wires to clear Plaintiffs' bank(s) was that Plaintiffs were never paid the full Purchase Price of Haak CJD due them.

22.    Despite numerous assurances and promises that they would forward to Plaintiffs the monies represented by the Missing Wires, Ackridge never did remit to Plaintiffs the full amount of the Purchase Price.

23.    In the course of Defendants Arangio Sr.'s and Arangio & George's representation of Plaintiffs, Plaintiffs instructed Defendants Arangio Sr. and Arangio & George to retain a certain letter, which letter purported to terminate Plaintiff Haak Motors' dealership franchise

agreement with Chrysler Motors (the "Termination Letter"). Plaintiffs further instructed Defendants Arangio Sr. and Arangio & George to release the Termination Letter to Chrysler Motors only after confirming that Plaintiffs' bank(s) had received the Wires and that the Dealership Sale transaction had been successfully concluded. Plaintiffs entrusted the Termination Letter and other documents of title to Defendants Arangio Sr. and Arangio & George, in escrow, upon such conditions.

24.    In the course of their representation of Plaintiffs, Defendants Arangio Sr. and Arangio & George utilized, at times, the services of Arangio Jr., an individual who, upon information and belief, was not a licensed attorney and was not qualified to practice law, to perform certain tasks on behalf of Plaintiffs.

25.    Despite never having confirmed whether Plaintiffs' bank(s) had received the Wires, Defendants Arangio Sr. and Arangio & George instructed Defendant Arangio Jr. to release the Bills of Sale of Parts, Inventory, and Goodwill, as well as the Termination Letter, to Chrysler Motors, or alternatively, failed to properly chaperone Defendant Arangio Jr. to prevent Defendant Arangio Jr. from sending the foregoing documents to Chrysler Motors prior to Defendants Arangio Sr. and Arangio & George being able to confirm Plaintiffs' bank(s) receipt of the Wires. Thereafter, and upon receipt of the Termination Letter, Chrysler Motors did, in fact, terminate its franchise agreement with Plaintiff Haak Motors.

26.    Defendants Arangio Sr. and Arangio & George also caused several instruments, including Bills of Sale for the sale of Haak CJD from Plaintiffs to Ackridge, to be executed by the Plaintiffs without ever confirming whether Plaintiffs' bank(s) had received the Missing Wires. The effect of the execution of these instruments was to "transfer" Plaintiffs' businesses and assets to Ackridge without Plaintiffs ever receiving payment of the full Purchase Price.

27.    On or about January 30, 2009, in the case styled Haak Motors, LLC, et al. v. Ackridge Automotive Group, LLC, et al., Case No. 17-C-08-013515 (the "Ackridge Suit"), this Court entered an Order in favor of Plaintiffs Haak Motors and Seahawk, granting their Motion for Summary Judgment (the "Summary Judgment Order") against Ackridge. A copy of the Summary Judgment Order is attached hereto as Exhibit H and is incorporated by reference as though fully set forth in its entirety herein.

28.    On or about February 26, 2009, this Court issued an Order (the "Inquisition Order") in the Ackridge Suit affixing Plaintiffs' damages as a result of Ackridge's attempted

fraudulent acquisition of Plaintiffs' businesses and assets. A copy of the Inquisition Order, which affixed Plaintiffs' damages in the total amount of $5,056,915.27, is attached hereto as Exhibit I and is incorporated by reference as though fully set forth in its entirety herein.

29.     Plaintiffs have made numerous attempts to have their franchise agreement with Chrysler Motors reinstated, to no avail. At this time, it appears that the resumption of Haak CJD's normal business activities, including the maintenance and operation of a Chrysler brand automobile franchise and dealership, would be neither practicable nor possible.

30.     ***Plaintiffs did not in any way contribute to the wrongdoing alleged herein.***

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over this dispute pursuant to MD. CODE ANN., CTS. & JUD. PROC. §§ 1-501, 4-401, and 4-402(d), in that this is an action for legal malpractice sounding in both contract and tort where the amount in controversy exceeds Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs, and attorneys' fees.

32.     This court has personal jurisdiction over the Defendants pursuant to MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(b)(1-4), in that Defendants contracted to provide legal services to Plaintiffs, all of whom are Maryland residents or Maryland limited liability companies, in conjunction with the sale of a Maryland business and certain real property situated in Maryland. In addition, Defendants' tortious acts and/or omissions took place in Maryland, and upon information and belief, Plaintiffs allege that Defendants regularly conduct and/or solicit business in Maryland and derive substantial revenue from services rendered in Maryland.

33.     Closing for the Dealership Sale transaction was held at the Dealership Property in Queen Anne's County, Maryland. Upon information and belief, Plaintiffs aver that Defendants Arangio Sr. and Arangio & George negotiated the Dealership Sale transaction principally from their offices in Philadelphia, Pennsylvania, and that they prepared the legal documents appertaining thereto in their offices in Philadelphia, Pennsylvania.

34.     This Court is the appropriate venue for this action to be heard pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201(b), in that the causes of action enumerated in this Complaint arose in Queen Anne's County, Maryland, where the real property at issue in this matter is also situated and any contract(s) entered into between the parties also arose.

## COUNT I

### LEGAL MALPRACTICE – NEGLIGENCE -

(All Plaintiffs vs. Defendants Arangio Sr. and Arangio & George)

35.    Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations contained in paragraphs 1 through ~~33~~ *34* of this Complaint as if fully set forth herein.

36.    On or about April 25, 2008, Plaintiff Haak employed Defendants Arangio Sr. and Arangio & George to represent Plaintiffs in connection with the Dealership Sale transaction, and ~~Defendants Arangio Sr. and Arangio & George agreed to so represent Plaintiffs. See Ex. B.~~

37.    Defendants Arangio Sr. and Arangio & George failed to confirm the receipt of the Wires by Plaintiffs' bank(s).

38.    In the course of their representation of Plaintiffs in conjunction with the Dealership Sale, Defendants Arangio Sr. and Arangio & George had a reasonable duty of care to confirm that Plaintiffs' bank(s) had received the Wires, thereby ensuring that Plaintiffs were actually paid the full Purchase Price of the Dealership Sale *prior to disbursement and transmittal of the documents of title and the Termination Letter.*

39.    Defendants Arangio Sr. and Arangio & George breached their duty of care to their clients, Plaintiffs, by failing to undertake the reasonable actions required of them to confirm the receipt of the Wires by Plaintiffs' bank(s).  Had Defendants Arangio Sr. and Arangio & George acted in conformance with the reasonable duties of care that they owed Plaintiffs, they likely would have discovered that Plaintiffs' bank(s) never received the Missing Wires, because, contrary to Ackridge's earlier representations, Ackridge had either cancelled the Missing Wires or the Missing Wires never existed.

40.    Defendants Arangio Sr. and Arangio & George owed Plaintiffs a reasonable duty to exercise that degree of care and diligence in their representation of Plaintiffs in conjunction with the Dealership Sale transaction as used by attorneys engaged in the practice of law.  This reasonable duty required in this instance that Defendants Arangio Sr. and Arangio & George confirm whether Plaintiffs' bank(s) had received *and cleared* the Wires.

41.    By failing to confirm whether Plaintiffs' bank(s) had received *and cleared* the Wires, Defendants Arangio Sr. and Arangio & George breached the duty that they owed Plaintiffs in violation of the standards reasonably to be expected of a reasonably competent

practitioner in his profession, and in these circumstances, and by their acts and omissions as alleged herein, negligently failed to render proper legal representation to Plaintiffs.

42.    But for Defendants Arangio Sr.'s and Arangio & George's negligence in failing to confirm whether Plaintiffs' bank(s) had received all of the monies represented by the *alleged* Wires, at all times herein, Plaintiffs would not have completed the Dealership Sale transaction, thereby avoiding the damages and losses they sustained as a result of such negligence.

43.    Defendants Arangio Sr. and Arangio & George knew or should have known that their clients, Plaintiffs, would suffer damages as a direct and proximate result of Defendants negligent acts and omissions as herein alleged.

44.    As a result of Defendants Arangio Sr.'s. and Arangio & George's negligence and their breaches of the duty they owed to Plaintiffs, Plaintiffs have suffered economic loss and Plaintiff Haak has suffered emotional trauma.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Two Million Dollars ($2,000,000.00), plus interest, costs and any and all such further relief as this Court deems necessary and appropriate.

## COUNT II

### LEGAL MALPRACTICE – NEGLIGENCE

(All Plaintiffs vs. Defendants Arangio Sr. and Arangio & George)

45.    Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations contained in paragraphs 1 through 43 *44* of this Complaint as if fully set forth herein.

46.    On or about April 25, 2008, Plaintiff Haak employed Defendants Arangio Sr. and Arangio & George to represent Plaintiffs in connection with the Dealership Sale transaction, and Defendants Arangio Sr. and Arangio & George agreed to so represent Plaintiffs. See Ex. B.

47.    Defendants Arangio Sr. and Arangio & George advised Plaintiffs to execute the instruments that effectuated the "transfer" of Plaintiffs' businesses and assets to Ackridge prior to confirming with Plaintiffs' bank(s) that they had indeed received the Wires.

48.    In the course of their representation of Plaintiffs in conjunction with the Dealership Sale, Defendants had a reasonable duty of care to confirm that Plaintiffs' bank(s) had received *and cleared* the Wires prior to Defendants Arangio Sr. and Arangio & George allowing the Bills of Sale and other related instruments to be executed by Plaintiffs.

49.    Defendants Arangio Sr. and Arangio & George breached their duty of care to their clients, Plaintiffs, by allowing Plaintiffs to execute the numerous instruments that purported to "transfer" Plaintiffs businesses and assets to Ackridge prior to confirming whether Plaintiffs' bank(s) had received *and cleared* the Wires.

50.    Had Defendants Arangio Sr. and Arangio & George acted in conformance with the reasonable duty of care that they owed Plaintiffs, Plaintiffs would not have consummated the Dealership Sale transaction because ~~Plaintiffs~~ *Chrysler Motors* would not have ~~executed~~ *received* the instruments requisite to effectuate such a "transfer" *of title and franchise to Ackridge.*

51.    Defendants Arangio Sr. and Arangio & George owed Plaintiffs a reasonable duty to exercise that degree of care and diligence in their representation of Plaintiffs in conjunction with the Dealership Sale transaction as used by attorneys engaged in the practice of law. This reasonable duty required in this instance that Defendants Arangio Sr. and Arangio & George ~~advise Plaintiffs~~ not *deliver* ~~to execute~~ the instruments purporting to "transfer" Plaintiffs' businesses and assets to Ackridge, unless and until such time as Defendants Arangio Sr. and Arangio & George had, in fact, confirmed Plaintiffs' bank(s) receipt *and clearing* of the Wires.

52.    By allowing Plaintiffs to execute the aforementioned instruments which "transferred" Plaintiffs' businesses and assets to Ackridge prior to obtaining confirmation from Plaintiffs' bank(s) that they had, in fact, received *and cleared* the Wires, Defendants Arangio Sr. and Arangio & George breached the duty they owed Plaintiffs in violation of the standards to be expected of a reasonably competent practitioner in his profession, and in these circumstances, and by their acts and omissions as alleged herein, negligently failed to render proper legal representation to Plaintiffs.

53.    But for Defendants Arangio Sr.'s and Arangio & George's negligence in allowing Plaintiffs' ~~to~~ execute*d* ~~the aforementioned~~ instruments ~~which "transferred" Plaintiffs' businesses and assets to Ackridge~~ *to be delivered* prior to obtaining confirmation from Plaintiffs' bank(s) that they had received *and cleared* the Wires, at all times herein, Plaintiffs would not have ~~executed those instruments and would not have~~ "transferred" their businesses and assets to Ackridge, thereby avoiding the damages and losses they sustained as a result of such negligence.

54.    Defendants Arangio Sr. and Arangio & George knew or should have known that their clients, Plaintiffs, would suffer damages as a direct and proximate result of their negligent acts and omissions.

55.    As a result of Defendants Arangio Sr.'s and Arangio & George's negligence and their breaches of the duties they owed to Plaintiffs, Plaintiffs have suffered economic loss and Plaintiff Haak has suffered emotional trauma.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Two Million Dollars ($2,000,000.00), plus interest, costs and any and all such further relief as this Court deems necessary and appropriate.

## COUNT III

### ~~LEGAL MALPRACTICE— NEGLIGENCE~~ *NEGLIGENT HIRING/NEGLIGENT RETENTION*

(All Plaintiffs vs. All Defendants)

56.    Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations contained in paragraphs 1 through ~~54~~ *55* of this Complaint as if fully set forth herein.

57.    On or about April 25, 2008, Plaintiff Haak employed Defendants Arangio Sr. and Arangio & George to represent Plaintiffs in connection with the Dealership Sale transaction, and Defendants Arangio Sr. and Arangio & George agreed to so represent Plaintiffs. See Ex. B.

58.    During the course of their representation of Plaintiffs, *Plaintiffs tendered to their attorneys and escrow agents, Defendants Arangio Sr. and Arangio & George, the Termination Letter and other documents of title, which Defendants Arangio Sr. and Arangio & George were to release to Chrysler Motors only after confirming that Plaintiffs' bank(s) had received and cleared The Wires.*

59.    *During the course of their representation of Plaintiffs,* Defendants Arangio Sr. and Arangio & George engaged the services of Defendant Arangio Jr., who, upon information and belief, is not a licensed attorney and is not qualified to practice law in either Pennsylvania or Maryland, to assist *them* ~~Defendants Arangio Sr. and Arangio & George~~ with certain tasks related to their representation of Plaintiffs.

60.    *Defendants Arangio Sr. and Arangio & George supplied the Termination Letter and other documents of title to Defendant Arangio Jr, or otherwise allowed Defendant Arangio Jr. access to these documents.*

61.    Defendant Arangio Jr. prematurely released the Termination Letter and other documents of title to Chrysler Motors before Defendants *Arangio Sr. and Arangio & George* had confirmed whether Plaintiffs' bank(s) had received all of the funds constituting the Purchase Price represented by the Wires.

62.    Defendants owed Plaintiffs a reasonable duty to exercise that degree of care and diligence in their representation of Plaintiffs in conjunction with the Dealership Sale transaction as used by attorneys engaged in the practice of law. This reasonable duty required in this instance that Defendants confirm whether Plaintiffs' bank(s) had received the Wires, and that Defendants comply with the strict mandates set forth by their clients, Plaintiffs, not to release the Termination Letter nor disburse the Bills of Sale to Chrysler Motors absent such confirmation(s).

63.    Defendants breached their duty of care to their clients, Plaintiffs, by instructing Defendant Arangio Jr. to prematurely release the Termination Letter and other documents of title to Chrysler Motors, or alternatively, by failing to properly chaperone Defendant Arangio Jr. to prevent him from prematurely releasing the Termination Letter and other documents of title to Chrysler Motors.

64.    *Defendants Arangio Sr. and Arangio & George had a duty to use reasonable care to select an employee who was competent and fit to perform the duties of an attorney and escrow agent. Defendants Arangio Sr. and Arangio & George knew that Defendant Arangio Jr. was not a licensed attorney. Defendants Arangio Sr. and Arangio & George also knew or should have known that Defendant Arangio Jr. would be likely to mishandle the Termination Letter and other documents of title, including prematurely sending these documents to Chrysler Motors, when they entrusted the Termination Letter and the documents of title to Defendant Arangio Jr.'s care. A reasonable and prudent employer would not have ignored such indications of Defendant Arangio Jr.'s unfitness for such duties.*

65.    *Defendants Arangio Sr. and Arangio & George also knew or should have known that by entrusting the Termination Letter and other documents of title to Defendant Arangio Jr.'s care, they were exposing their clients, Plaintiffs, to an unreasonable risk of harm, including the premature cancellation of Plaintiffs' Chrysler Motors franchise.*

66. ~~By releasing the Termination Letter and disbursing the Bills of Sale prior to obtaining confirmation from Plaintiffs' bank(s) that they had, in fact, received *and cleared* the Wires, Defendants breached the duty they owed Plaintiffs in violation of the standards reasonably to be expected of a reasonably competent practitioner in his profession, and in these circumstances, and by their acts and omissions as alleged herein, negligently failed to render proper legal representation to Plaintiffs.~~

67. *Defendants Arangio Sr. and Arangio & George knew, or should have known, that Defendant Arangio Jr. would be likely to come into contact with their clients. Plaintiffs were clients of Defendants Arangio Sr. and Arangio & George who would foreseeably come into contact with Defendant Arangio Jr. Therefore, Defendants Arangio Sr. and Arangio & George owed Plaintiffs a duty to use reasonable care to select an employee who was competent and fit to perform the duties of an attorney and escrow agent, and such duty was breached.*

68. *Because Defendant Arangio Jr. was not a licensed attorney, the likelihood of the risk of Defendant Arangio Jr. being unable to conduct complicated automobile dealership sales transactions was high. Defendants Arangio Sr. and Arangio & George knew, or should have known, that Defendant Arangio Jr. was not competent or fit for the duties of an attorney or an escrow agent since he was not, in fact, a duly licensed attorney. Defendants Arangio Sr. and Arangio & George therefore breached their duties to use reasonable care to select an employee that was competent and fit for the position of attorney and escrow agent.*

69. ~~But for Defendants' negligence in prematurely releasing the Termination Letter and other documents of title to Chrysler Motors, at all times herein, Plaintiffs would not have terminated their franchise agreement with Chrysler Motors and would have been able to continue their business operations subsequent to Ackridge's fraud, thereby avoiding the damages and losses they sustained as a result of Defendants's negligence.~~

70. ~~Defendants knew or should have known that their clients, Plaintiffs, would suffer damages as a direct and proximate result of Defendants' negligent acts and omissions.~~

71. As a result of *Defendants' negligence in hiring and retaining Defendant Arangio Jr. in the position of an attorney and an escrow agent, Plaintiffs were injured as alleged.* ~~Defendants' negligence and their breaches of the duties they owed to Plaintiffs, Plaintiffs have suffered economic loss and Plaintiff Haak has suffered emotional trauma.~~

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Two Million Dollars ($2,000,000.00), plus interest, costs and any and all such further relief as this Court deems necessary and appropriate.

## COUNT IV

### BREACH OF CONTRACT

### (All Plaintiffs vs. All Defendants)

72.     Plaintiffs repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 63 *66* of this Complaint as if fully set forth herein.

73.     On or about April 25, 2008, Plaintiff Haak hired Defendants to serve as Plaintiffs' counsel on the general terms and conditions as set forth above.  See Ex. B.

74.     Pursuant to the terms of the Fee Agreement contract, Defendants pledged to provide Plaintiffs with "high quality" legal services.  See Ex. B.

75.     As set forth above, Defendants allowed the Dealership Sale transaction to proceed on its scheduled closing date of July 24, 2008 without confirming whether the funds represented by the Wires had been received and/or cleared by Plaintiffs' bank(s).

76.     As also set forth above, Defendants prematurely released the Termination Letter and other *documents of title* to Chrysler Motors and *failed to advise their clients, Plaintiffs*, not to execute the instruments purporting to consummate the "transfer" of Plaintiffs' assets and businesses to Ackridge before Defendants had confirmed Plaintiffs' bank(s) receipt *and clearance* of the Wires.

77.     Defendants' failure to undertake the confirmation(s) enumerated above, as well as their failure to adequately safeguard Plaintiffs' property entrusted to them in escrow and to properly advise Plaintiffs not to execute the instruments consummating the "transfer" of Plaintiffs' businesses and assets to Ackridge absent receipt of the Wires by Plaintiffs' bank(s), constitute a failure to provide Plaintiffs with "high quality," or even fair or average-quality legal services.

78.     Defendants materially breached their Fee Arrangement contract with Plaintiffs where they did not provide Plaintiffs with legal services of a quality customary and normal for the undertaking at hand.

79.     Had Defendants fulfilled their contractual obligations and furnished Plaintiffs "high quality" legal services, it is certain that: (a) Defendants would have discovered that Plaintiffs' bank(s) did not receive the Missing Wires; (b) Plaintiffs would not have proceeded with the closing of the Dealership Sale transaction; and (c) Plaintiffs would not have terminated their Chrysler Motors dealership franchise and would not have been interrupted in their normal business operations. Therefore, had Defendants rendered "high quality" legal services on Plaintiffs' behalf, Plaintiffs would have avoided the ensuing economic losses flowing from Defendants' material breach of the Fee Agreement.

80.     As a result of Defendants' failure to fulfill their contractual obligations and breach of the Fee Arrangement, Plaintiffs have suffered a loss in an amount to be proven at trial, but in no event less than Two Million Dollars ($2,000,000.00).

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be proven at trial, but in no event less than Two Million Dollars ($2,000,000.00), plus interest and costs.

## COUNT V

### BREACH OF EXPRESS WARRANTY

### (All Plaintiffs vs. All Defendants)

81.     Plaintiffs repeat, re-allege, and incorporate by reference each and every allegation contained in paragraphs 1 through 62 *75* of this Complaint as if fully set forth herein.

82.     On or about April 25, 2008, Plaintiff Haak hired Defendants to serve as Plaintiffs' counsel on the general terms and conditions as set forth above. See Ex. B.

83.     Pursuant to the terms of the written Fee Agreement contract, Defendants expressly warranted the legal services that they were to provide Plaintiffs with as "high quality" legal services. See Ex. B.

84.     As set forth above, Defendants allowed the Dealership Sale transaction to proceed on its scheduled closing date of July 24, 2008 without confirming whether the funds represented by the Wires had been received and/or cleared by Plaintiffs' bank(s), and Defendants *prematurely released the Termination Letter and other documents of title to Chrysler Motors and* failed to advise their clients, Plaintiffs, not to execute the instruments purporting to consummate the "transfer" of Plaintiffs' assets and businesses to Ackridge before Defendants had confirmed Plaintiffs' bank(s) receipt of the Wires.

85.    Defendants' failure to undertake the confirmation(s) enumerated above, to adequately safeguard Plaintiffs' property entrusted to them in escrow, and to properly advise Plaintiffs not to execute the instruments consummating the "transfer" of Plaintiffs' businesses and assets to Ackridge absent receipt of the Wires by Plaintiffs' bank(s), constitute the rendering of ~~low-quality~~ *sub-standard* legal services to Plaintiffs.

86.    At all times herein, the express warranty that *Defendants were to provide* Plaintiffs with "high quality" legal services was the basis for Plaintiffs hiring Defendants as Plaintiffs' attorneys to represent them in conjunction with the Dealership Sale transaction.

87.    Had Defendants rendered Plaintiffs "high quality" legal services in accordance with their express warranty to that effect, it is certain that: (a) Defendants would have discovered that Plaintiffs' bank(s) did not receive the Missing Wires; (b) Plaintiffs would not have proceeded with the closing of the Dealership Sale transaction; and (c) Plaintiffs would not have terminated their Chrysler Motors dealership franchise and would not have been interrupted in their normal business operations.

88.    As a result of Defendants' breach of their express warranty to render Plaintiffs "high quality" legal services under the written Fee Agreement, Plaintiffs have suffered a loss in an amount to be proven at trial, but in no event less than Two Million Dollars ($2,000,000.00).

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be proven at trial, but in no event less than Two Million Dollars ($2,000,000.00), plus interest and costs.

## COUNT VI

### NEGLIGENCE

(All Plaintiffs vs. Defendants Arangio Sr. and Arangio & George)

89.    Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations contained in paragraphs 1 through ~~81~~ *83* of this Complaint as if fully set forth herein.

90.    On or about April 25, 2008, *Plaintiff Haak employed Defendants Arangio Sr. and Arangio & George* to represent Plaintiffs in connection with the Dealership Sale transaction, and Defendants Arangio Sr. and Arangio & George agreed to so represent Plaintiffs.  See Ex. B.

91.    Defendants Arangio Sr. and Arangio & George failed to confirm the receipt of the Wires by Plaintiffs' bank(s).

92.     As Plaintiffs' attorneys, Defendants Arangio Sr. and Arangio & George owed their clients, Plaintiffs, a duty of care to ~~ensure that Plaintiffs were paid the entire Purchase Price in conjunction with the Dealership Sale transaction and the purported sale of Plaintiffs' businesses and assets~~ *verify all funds needed to close the Dealership Sale transaction were in fact collected or cleared prior to disbursing the Termination Letter and documents of title to Chrysler Motors* . In conjunction with the aforementioned duty of care, Defendants Arangio Sr. and Arangio & George, irrespective of their status as Plaintiffs' attorneys, owed Defendants at least that level of skill and care as used and exercised by a reasonably prudent person in the conduct of his own affairs.

93.     In derogation and breach of the foregoing duty of care that Defendants Arangio Sr. and Arangio & George owed Plaintiffs, Defendants Arangio Sr. and Arangio & George allowed the Dealership Sale to proceed on its scheduled closing date of July 24, 2008 without confirming whether the funds represented by the Wires had been received by Plaintiffs' bank(s).

94.     Defendants Arangio Sr. and Arangio & George did not employ that level of skill and care used by the reasonably prudent person in the conduct of his own affairs with respect to the above-mentioned actions.

95.     But for Defendants Arangio Sr.'s and Arangio & George's breaches of the duty that they owed Plaintiffs, Plaintiffs would not have suffered the damages that ensued from the fraudulent transfer of their assets and businesses to Ackridge, namely, Plaintiffs failure to collect the full Purchase Price for the transfer of said assets and businesses *and consequential damages*.

96.     Defendants' negligent acts and omissions are the direct and proximate cause of the damages suffered by Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants for the sum of Five Million Dollars ($5,000,000.00), plus interest and costs.

## COUNT VII

### NEGLIGENCE – *BREACH OF TRUST*

(All Plaintiffs vs. Defendants Arangio Sr. and Arangio & George)

97.     Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations contained in paragraphs 1 through ~~89~~ *91* of this Complaint as if fully set forth herein.

98.    ~~On or about April 25, 2008, Plaintiff Haak employed Defendants Arangio Sr. and Arangio & George to represent Plaintiffs in connection with the Dealership Sale transaction, and Defendants Arangio Sr. and Arangio & George agreed to so represent Plaintiffs. See Ex. B.~~

99.    ~~Defendants Arangio Sr. and Arangio & George advised Plaintiffs to execute the instruments that effectuated the "transfer" of Plaintiffs' businesses and assets to Ackridge despite not having confirmed with Plaintiffs' bank(s) whether they had indeed received the Wires.~~

100.    ~~As Plaintiffs' attorneys, Defendants Arangio Sr. and Arangio & George owed their clients, Plaintiffs, a duty of care to advise Plaintiffs not to execute the Bills of Sale and other related instruments consummating the "transfer" of Plaintiffs' businesses and assets to Ackridge until such time as Defendants Arangio Sr. and Arangio & George were able to confirm that Plaintiffs' bank(s) had received the Wires. In conjunction with the aforementioned duty of care, Defendants Arangio Sr. and Arangio & George, irrespective of their status as Plaintiffs' attorneys, owed Defendants at least that level of skill and care as used and exercised by a reasonably prudent person in the conduct of his own affairs.~~

101.    *Plaintiffs entrusted the Termination Letter and documents of title to defendants Arangio Sr. and Arangio & George pending verification of Plaintiffs' bank(s) receipt and clearance of the Wires.*

102.    Defendants Arangio Sr. and Arangio & George breached the *trust* ~~duty of care~~ that they owed to Plaintiffs by *prematurely delivering the Termination Letter and documents of title to Chrysler Motors without verifying whether the funds represented by the Wires had been received and cleared by Plaintiffs' bank(s).* ~~advising Plaintiffs to execute the numerous instruments that purported to "transfer" Plaintiffs businesses and assets to Ackridge before Defendants Arangio Sr. and Arangio & George had confirmed whether Plaintiffs' bank(s) had received the Wires.~~

103.    Defendants Arangio Sr. and Arangio & George did not employ that level of skill and care used by the reasonably prudent person in the conduct of his own affairs with respect to the above-mentioned actions.

104.    Had Defendants Arangio Sr. and Arangio & George acted in conformance with the ~~reasonable duty of care that they owed~~ *trust reposed in them by* Plaintiffs, Plaintiffs would not have consummated the Dealership Sale transaction because ~~Plaintiffs would not have executed the instruments requisite to effectuate such a "transfer."~~ *Defendants Arangio Sr. and*

*Arangio & George would not have delivered the Termination Letter and documents of title to Chrysler Motors.*

105.    But for Defendants Arangio Sr.'s and Arangio & George's ~~negligence~~ *breach of Plaintiffs' trust by delivering the Termination Letter and documents of title to Chrysler Motors* ~~in allowing Plaintiffs to execute the aforementioned instruments which "transferred" Plaintiffs' businesses and assets to Ackridge~~ prior to obtaining confirmation from Plaintiffs' bank(s) that they had received *and cleared* the Wires, at all times herein, Plaintiffs would not have ~~executed those instruments and would not have~~ "transferred" their businesses and assets to Ackridge, thereby avoiding the *consequential* damages and losses they sustained as a result of such ~~negligence~~ *breach of trust*.

106.    Defendants Arangio Sr.'s and Arangio & George's *breach of trust* ~~negligent acts and omissions~~ as herein alleged *in this Count VII of the Amended Complaint* are the direct and proximate cause of Plaintiffs' damages.

107.    As a result of Defendants Arangio Sr.'s and Arangio & George's ~~negligence and their breaches of the duty they owed to Plaintiffs~~ *breach of Plaintiffs' trust*, Plaintiffs have suffered economic loss and Plaintiff Haak has suffered emotional trauma.

WHEREFORE, Plaintiffs demand judgment against Defendants for the sum of Five Million Dollars ($5,000,000.00), plus interest and costs.

## COUNT VIII

### NEGLIGENCE

### (All Plaintiffs vs. All Defendants)

108.    Plaintiffs repeat, re-allege, and incorporate by reference all of the allegations contained in *paragraphs 1 through 99 of this Complaint as if fully set forth herein.*

109.    On or about April 25, 2008, Plaintiff Haak employed Defendants Arangio Sr. and Arangio & George to represent Plaintiffs in connection with the Dealership Sale transaction, and Defendants Arangio Sr. and Arangio & George agreed to so represent Plaintiffs. See Ex. B.

110.    During the course of their representation of Plaintiffs, Defendants Arangio Sr. and Arangio & George engaged the services of Defendant Arangio Jr., who, upon information and belief, is not a licensed attorney and is not qualified to practice law in either Pennsylvania or Maryland, to assist Defendants Arangio Sr. and Arangio & George with certain tasks related to their representation of Plaintiffs.

111.    Defendant Arangio Jr. prematurely released the Termination Letter and other documents of title to Chrysler Motors before Defendants had confirmed whether Plaintiffs' bank(s) had received all of the funds constituting the Purchase Price represented by the Wires.

112.    As Plaintiffs' attorneys and escrow agents, Defendants owed their clients, Plaintiffs, a duty of care to withhold releasing the Termination Letter and other documents of title to Chrysler Motors if and until such time as Defendants had been able to confirm whether Plaintiffs' bank(s) had received *and cleared* the Wires.  In conjunction with the aforementioned duty of care, Defendants, irrespective of their status as Plaintiffs' attorneys and/or escrow agents, owed Defendants at least that level of skill and care as used and exercised by a reasonably prudent person in the conduct of his own affairs.

113.    ~~Defendants breached the duty of care that they owed to Plaintiffs as Plaintiffs' attorneys and/or escrow agents by instructing Defendant Arangio Jr. to prematurely release the Termination Letter and other documents of title to Chrysler Motors prior to having obtained confirmation from Plaintiffs' bank(s) that they had, in fact, received the Wires.  Alternatively,~~ Defendants breached the duty of care that they owed to Plaintiffs as Plaintiffs' attorneys and/or escrow agents by failing to properly ~~chaperone~~ *supervise* Defendant Arangio Jr. to prevent Defendant Arangio Jr. from prematurely releasing the Termination Letter and other documents of title to Chrysler Motors.

114.    Defendants did not employ that level of skill and care used by the reasonably prudent person in the conduct of his own affairs with respect to the above-mentioned actions.

115.    Had Defendants acted in conformance with the reasonable duty of care that they owed Plaintiffs, Plaintiffs would not have terminated their Chrysler Motors dealership franchise and would have been able to continue their normal business operations ~~in light of and despite Ackridge's fraud.~~

116.    ~~But for Defendants' negligence in prematurely releasing the Termination Letter and other documents of title to Chrysler Motors, at all times herein, Plaintiffs would not have terminated their dealership franchise and would have been able to continue their normal business operations despite Ackridge's fraud , thereby avoiding the damages and losses they sustained as a result of such negligence.~~

117.    Defendants' negligent acts and omissions as herein alleged are the direct and proximate cause of Plaintiffs damages.

118.    As a result of Defendants' negligence and their breaches of the duty they owed to Plaintiffs, Plaintiffs have suffered economic loss and Plaintiff Haak has suffered emotional trauma.

WHEREFORE, Plaintiffs demand judgment against Defendants for the sum of Five Million Dollars ($5,000,000.00), plus interest and costs.

Dated: ~~May~~ June 3 , 2009.

/S/
_____
CURTIS C. COON
Coon & Cole, LLC
*401 Washington Ave., Ste. 501*
Towson, MD  21204
(410) 244-8800
Cccoon@ccclaw.net
*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| **HAAK MOTORS, LLC et al.** | * | IN THE |
| Plaintiffs | * | CIRCUIT COURT FOR |
| v. | * | QUEEN ANNE'S COUNTY, |
| **ROBERT L. ARANGIO, SR., ESQ. et al** | * | MARYLAND |
| Defendants | * | Case No.: <u>17-C-09-014206</u> |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _5_ day of June, 2009, I caused a copy of (1) Plaintiffs' Amended Complaint – clean version, (2) Plaintiffs' Amended Complaint – interlineated version, and (3) Plaintiffs' Request for Jury Trial to be served on the Defendants in the above-captioned action, along with the original pleadings and process in this action, via personal service to be effected by a private process server.

CURTIS C. COON
Coon & Cole, LLC
401 Washington Ave., Ste. 501
Towson, MD 21204
(410) 244-8800
cccoon@ccclaw.net
*Attorneys for Plaintiffs*